UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     :
                                 :     3:00-CR-158 (AWT)
        v.                           :     3:04-CV-2031 (AWT)
                                 :
MIGUEL GUERRERO-CEDEÑO,     :     January 4, 2005

**GOVERNMENT'S RESPONSE TO DEFENDANT GUERRERO-CEDEÑO'S
PETITION FOR COLLATERAL RELIEF**

On December 8, 2004, the Court issued an Order to Show Cause directing the

Government to file a response to a motion under 18 U.S.C. § 2255 filed by the defendant, Miguel

Guerrero-Cedeño, also known as "Miguel Machuca,"[1](hereinafter "Def. Mot.").

I.       **Statement of Facts and Procedural History**

On June 28, 2000, the defendant was arrested without a warrant in possession of

quantities of cocaine, cocaine base and heroin. On July 20, 2000, a federal grand jury sitting in

Connecticut returned a one-count indictment charging the defendant with possession of 50 grams

or more of cocaine base with intent to distribute. On October 15, 2002, the defendant entered a

plea of guilty to the charge in the indictment. In the plea agreement, a copy of which is attached

hereto, the defendant stipulated to a drug quantity attribution of at least 1.5 kilograms of cocaine

base. The parties also entered into a Guideline stipulation as follows: Base Offense Level 38, 3-

level reduction for acceptance of responsibility, no role adjustment, and Criminal History

Category I, for a range of 168 to 210 months. See Exhibit 1, Plea Agreement at 4. At

---

[1]The defendant gave the name "Miguel Machuca" at the time of his arrest and used
it throughout the proceedings in this case, claiming that he was a United States citizen. At
sentencing, he advised that his true name is Miguel Guerrero-Cedeño, and that he is a citizen
of the Dominican Republic.

sentencing, the Probation Office recommended the same range as the parties had stipulated to, but calculated the defendant's Guidelines as follows: Base Offense Level 32, four-level increase for role, three-level decrease for acceptance of responsibility, Criminal History Category I. See Exhibit 2, Presentence Investigation Report, Paragraphs 15-24. On March 5, 2003, the Court sentenced the defendant to a term of 168 months imprisonment, 5 years supervised release and a $100 special assessment. In arriving at the sentence, the Court adopted the stipulation of the parties in all respects, and rejected the recommendation of the Probation Office of a four-level enhancement for role in the offense. See Exhibit 3, Sentencing Transcript at 6. Judgment entered on March 7, 2003, and the defendant filed a timely notice of appeal on March 11, 2003.

On appeal, the defendant argued that his warrantless arrest was not supported by probable cause, and that, accordingly, all evidence which was seized incident to the arrest and subsequent searches should have been suppressed. On January 12, 2004, the Court of Appeals for the Second Circuit summarily affirmed the defendant's conviction.

The defendant did not file a petition for writ of certiorari. He is presently serving his sentence.

## II.    The Record Does Not Support The Request for Relief

The defendant's sole claim flows from his assertion that the Court increased his Guideline range by four levels based on his role as an organizer or leader. This is simply not the case. The plea agreement specifically provided that no role enhancement was appropriate, and the Government took the position that this provision of the agreement should be adopted by the Court. The Court adopted the provision, and did not impose an increase for role. Accordingly, there is no factual basis for the defendant's claim.

**III.    The Court Should Deny Relief Based on the *Blakely* Claim.**

    **A.    The Second Circuit Has Held that *Blakely* Does Not Disturb Binding Circuit Precedent that the U.S. Sentencing Guidelines Are Valid**

Even had matters transpired as the defendant claims, the Second Circuit's recent decision in *United States v. Mincey*, No. 03-1419L, 2004 WL 1794717 (2d Cir. Aug. 12, 2004) (per curiam), is directly on point. In *Mincey*, the Court decided that it would not apply *Blakely* to the federal sentencing guidelines, so that enhancements and departures provided for under the guidelines need not be proven to a jury beyond a reasonable doubt. Specifically, the Court stated:

> We therefore reject appellants' arguments that, in this Circuit, the Sixth Amendment now requires every enhancement factor that increases a Guidelines range to be pleaded and proved to a jury beyond a reasonable doubt. Unless and until the Supreme Court rules otherwise, the law in this Circuit remains as stated in *Garcia, Thomas,* and our other related case law. We conclude that the district court did not err in sentencing defendants in accordance with the Guidelines as previously interpreted by this Court.

> In so holding, we expect that, until the Supreme Court rules otherwise, the courts of this Circuit will continue fully to apply the Guidelines.

The Supreme Court will address the issue squarely when it considers the appeals in *United States v. Booker*, 04-104, and *United States v. Fanfan*, 04-105 during the October 2004 term. While it is possible that the Supreme Court might disagree with the Second Circuit's holding, there would not be any reason to await disposition of the present motion until after a decision in *Booker* and *Fanfan* because the defendant would not be entitled to collateral relief even if the Supreme Court were to find *Blakely* applicable to the federal sentencing guidelines.

    **B.    Even if *Blakely* Were to Apply to the Guidelines, It Would Be a New**

**Procedural Rule That Does Not Apply Retroactively under *Teague***

The principle adopted in *Blakely* constitutes a "new constitutional rule of criminal procedure," which, under *Teague v. Lane*, 489 U.S. 288 (1989), is not retroactively applicable to cases (like the defendant's) that became final before the decision was announced. The Supreme Court's decision in *Schriro v. Summerlin*, 124 S. Ct. 2519 (2004), supports the argument that *Blakely* is a new procedural rule that is not retroactive to cases on collateral review. In *Summerlin*, the Court considered whether *Ring v. Arizona*, 536 U.S. 584 (2002), applies retroactively to cases that had already become final when *Ring* was decided. *Ring* held that because Arizona law authorized the death penalty only if an aggravating factor was present, *Apprendi* required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in *Ring*, became final long before *Ring* was decided.

The Supreme Court held that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." 124 S. Ct. at 2526. The Court explained that a "new rule" resulting from one of its decisions applies to convictions that are already final only in limited circumstances. New *substantive* rules generally apply retroactively, but new *procedural* rules generally do not – only "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" are given retroactive effect. *Id.* at 2523 (internal quotation marks omitted). The Court concluded that *Ring*'s holding is properly classified as procedural, rather than substantive, because it did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, it merely changed the method of determining whether the defendant engaged in that conduct. *Id.* at 2523-24. The

Court also held that *Ring* did not fall within *Teague*'s narrow exception for "watershed rules" of criminal procedure. To qualify as a watershed rule, the Court explained, a new procedural rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." *Id.* at 2523 (quoting *Teague*, 489 U.S. at 313) (emphasis added in *Summerlin*). The Court held that *Ring* did not announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminishes the accuracy of capital sentencing proceedings. *Id.* at 2424-25.

Consistent with the reasoning of *Summerlin*, the Second Circuit had joined every other Court of Appeals to have considered the issue in holding that because *Apprendi* is a procedural rule that does not fall within the "watershed" exception, it is not retroactively applicable to cases on collateral review. *See Coleman v. United States*, 329 F.3d 77 (2d Cir.), *cert. denied*, 124 S. Ct. 840 (2003).[2] Importantly, the Second Circuit in *Coleman* held that *Apprendi* was not a watershed rule not only despite the difference between using the jury and the judge as factfinder, but also despite the difference in the two burdens of proof (preponderance-of-the-evidence v. beyond-a-reasonable-doubt). In *Coleman*, the Court pointed out that in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also alter our understanding of the bedrock procedural elements essential to the

---

[2]*Accord Sepulveda v. United States*, 330 F.3d 55 (1st Cir. 2003); *United States v. Swinton*, 333 F.3d 481 (3d Cir.), *cert. denied*, 124 S. Ct. 458 (2003); *United States v. Sanders*, 247 F.3d 139 (4th Cir.), *cert. denied*, 534 U.S. 1032 (2001); *United States v. Brown*, 305 F.3d 304 (5th Cir. 2002), *cert. denied*, 538 U.S. 1007 (2003); *Goode v. United States*, 305 F.3d 378 (6th Cir.), *cert. denied*, 537 U.S. 1096 (2002); *Curtis v. United States*, 294 F.3d 841 (7th Cir.), *cert. denied*, 537 U.S. 976 (2002); *United States v. Moss*, 252 F.3d 993 (8th Cir. 2001), *cert. denied*, 534 U.S. 1097 (2002); *United States v. Sanchez-Cervantes*, 282 F.3d 664 (9th Cir.), *cert. denied*, 537 U.S. 939 (2002); *United States v. Mora*, 293 F.3d 1213 (10th Cir.), *cert. denied*, 537 U.S. 961 (2002); *McCoy v. United States*, 266 F.3d 1245 (11th Cir. 2001), *cert. denied*, 536 U.S. 906 (2002).

fairness of those proceedings. In short, it must be a groundbreaking occurrence." 329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "*Apprendi* did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." *Id.* at 89 (internal quotation marks omitted). This conclusion was supported by the consistent holdings of the Supreme Court and the Second Circuit that *Apprendi* errors may be reviewed for harmlessness, and not structural error -- a conclusion that would have stood in tremendous tension with a determination that *Apprendi* announced a watershed rule, *see id.* at 89-90 -- that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty," *id.* at 88 (quoting *United States v. Mandanici*, 205 F.3d 519, 528 (2d Cir. 2000) (quoting, in turn, *Graham v. Collins*, 506 U.S. 461, 478 (1993))).

*Blakely,* like *Apprendi*, entailed an extension of the procedural rule that certain facts that go to punishment must be proven beyond a reasonable doubt to a jury. The Supreme Court has defined a "new rule" under *Teague* as one that was not "'*dictated* by precedent existing at the time the defendant's conviction became final.'" *Graham v. Collins*, 506 U.S. 461, 467 (1993) (quoting *Teague*, 489 U.S. at 301 (emphasis in *Teague*)); *see Sawyer v. Smith*, 497 U.S. 227, 234 (1990). Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, *Sawyer*, 497 U.S. at 236, "or even control or govern" it, *Saffle v. Parks*, 494 U.S. 484, 491 (1990).

Under that definition, *Blakely* announced a new rule for *Teague* purposes. Every court of appeals with criminal jurisdiction held in the wake of *Apprendi* that the Sixth Amendment does

not require facts that increase a defendant's Guidelines offense level to be found by the jury, and

that judicial fact-finding in the application of the Guidelines is therefore constitutional.[3] *See*

*Simpson v. United States*, 376 F.3d 679, 681 (7th Cir. 2004) ("The rule announced in *Blakely* is

based in the Constitution and was not dictated or compelled by *Apprendi* or its progeny."); *cf. In*

*re Dean*, 375 F.3d 1287 (11th Cir. 2004) (holding that Supreme Court had not made *Blakely*

retroactive to cases already final on direct review, for purposes of filing second or successive

§ 2255 petition).[4]

---

[3]*See, e.g., United States v. Pettigrew*, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003); *United States v. Casas*, 356 F.3d 104, 128 (1st Cir.), *cert. denied*, 124 S. Ct. 2405 (2004); *United States v. Luciano*, 311 F.3d 146, 153 (2d Cir. 2002), *cert. denied*, 124 S. Ct. 1185 (2004); *United States v. Parmelee*, 319 F.3d 583, 592 (3d Cir. 2003); *United States v. Cannady*, 283 F.3d 641, 649 & n.7 (4th Cir.), *cert. denied*, 537 U.S. 936 (2002); *United States v. Floyd*, 343 F.3d 363, 372 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 2190 (2004); *United States v. Tarwater*, 308 F.3d 494, 517 (6th Cir. 2002); *United States v. Merritt*, 361 F.3d 1005, 1015 (7th Cir. 2004), *petition for cert. pending*, No. 03-10979 (filed June 18, 2004); *United States v. Banks*, 340 F.3d 683, 684-685 (8th Cir. 2003); *United States v. Ochoa*, 311 F.3d 1133, 1134-1136 (9th Cir. 2002); *United States v. Mendez-Zamora*, 296 F.3d 1013, 1020 (10th Cir.), *cert. denied*, 537 U.S. 1063 (2002); *United States v. Ortiz*, 318 F.3d 1030, 1039 (11th Cir. 2003).

[4]The few district courts to have considered the issue agree that even if *Blakely* applies to the federal Sentencing Guidelines, it is not retroactive on collateral review. *See Orchard v. United States*, 2004 WL 1946319, *2 to *3 (D. Me. Sept. 2, 2004); *Morris v. United States*, 2004 WL 1944014 (C.D. Ill. Sept. 1, 2004); *Garcia v. United States*, No. 04-CV-0465, 2004 WL 1752588 at *6 (N.D.N.Y. Aug. 4, 2004); *United States v. Stoltz*, 325 F.Supp.2d 982, 987 (D. Minn. 2004); *Rosario-Dominguez v. United States*, No. 03 Civ. 4675 JSR GWG, 99CR.73 AGS, 2004 WL 1814021, at *9 n. 3 (S.D.N.Y. Aug. 16, 2004) (magistrate's report and recommendation); *United States v. Beatty*, No. 04-6648, 2004 WL 1759028 at *1 (4th Cir. Aug. 5, 2004) (unpublished).

## III.    Conclusion

For all of the above reasons, the defendant's motion for collateral relief is meritless. The Court should deny the motion for the reasons stated above.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

H. GORDON HALL
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT05153
157 Church Street, 23rd Floor
New Haven, CT  06510
Tel.: (203) 821-3700
Fax: (203) 773-5377
gordon.hall@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2005, a copy of the foregoing was sent by first-class mail to:

MIGUEL GUERRERO-CEDEÑO, aka Miguel Machuca
 Inmate # 13924-014
FCI ELKINGTON
P.O. BOX 10
LISBON, OH 44432

H. Gordon Hall
Assistant U.S. Attorney