# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

**UNITED STATES OF AMERICA**

|  |  |
|---|---|
| | **Docket No.**   3:00CR00158(AWT) |
| VS. | **Defendant No.**   1 |

**MIGUEL MACHUCA**
**AKA Miguel A. Machucha" and "Maestro" True Name: Miguel Guerrero Cedeño**

## PRESENTENCE REPORT

| Prepared for: | The Honorable Alvin W. Thompson | Sentencing Date: | January 30, 2003 |
|---|---|---|---|
| | United States District Judge | | @ 10:00 a.m. |

| Prepared by: | Bunita B. Keyes | Office Location: | Hartford |
|---|---|---|---|
| | United States Probation Officer | | |

**Offense:**   Possession with Intent to Distribute and to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841

**Penalty:**   Life imprisonment; 10 years mandatory minimum; 5 years to life supervised release; $4,000,000 fine; $100 special assessment

**Date of Arrest: 6/20/00**       **Date Offense Concluded: 6/20/00**       **Date of Plea: 10/15/02**

**Custodial Status:**   In federal custody since November 17, 2000

**Identifying Data**

**Date of Birth: 11/13/61**       **Age: 41**       **Sex: Male**       **Race: White/Hispanic**

**Citizenship: Dominican Republic**       **Dependents: 0**       **Education: 5th Grade**

**FBI No.: 937508TB7**       **SSN: Unknown**       **Other ID No.: A72365909**

**U.S. Marshal No.: 13924-014**

**Legal Address: Wyatt Detention Facility**
                          **Central Falls, Rhode Island**

**Detainers:**       **INS**
**Codefendants:   None**

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| H. Gordon Hall | William Bloss (Appointed) |
| 157 Church Street, 23rd Floor | 350 Orange St. |
| New Haven, CT 06510 | New Haven, CT 06503 |
| (203) 821-3700 | (203) 772-3100 |

**Date of First Disclosure: January 9, 2002**                          **Mandatory Minimum [X]**
**Date of Second Disclosure:**

GOVERNMENT
EXHIBIT
2

COPY 3

## PART A.  THE OFFENSE

<u>Charge(s) and Conviction(s)</u>

1.     On October 15, 2002, the defendant, Miguel Machuca, true name, Miguel Guerrero Cedeño, a.k.a. "Miguel A. Machucha" and "Maestro" appeared in the United States District Court at Hartford, Connecticut, before the Honorable Alvin W. Thompson, United States District Judge.  On that date, Mr. Machuca entered a guilty plea to an Indictment in Criminal Number 3:00CR00158(AWT), which charges Possession with Intent to Distribute and to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841.  Miguel Machuca is represented by appointed counsel, William M. Bloss.

2.     Sentencing was originally scheduled for January 3, 2003 and is now scheduled for January 30, 2003 at 10:00 a.m.  Mr. Machuca was arrested on June 20, 2000 by the New Haven Task Force and held in the custody of the State of Connecticut on the offense conduct.  A federal detainer was lodged on July 18, 2000 and he was taken into federal custody on November 17, 2000.  He has remained in federal custody since that time.  The defendant is a resident of the Dominican Republic and he is subject to deportation following any period of incarceration.

3.     Contingent on the defendant's complete and truthful disclosure to the probation officer and the Government, and based on the defendant's prompt recognition and affirmative acceptance of personal responsibility and timely guilty plea, the Government recommends a three level decrease in the Adjusted Offense Level for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

4.     Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government entered into a stipulation of offense conduct and an agreement on the guideline calculations.  The Government and the defendant stipulate the defendant's base offense level, pursuant to § 2D1.1(c)(1), is 38.  There is no adjustment under § 3B1.1(a) for role in the offense.  Three levels are subtracted under Section 3E1.1 for acceptance of responsibility, resulting in a total offense level of 35.  A total offense level of 35 with a criminal history category of I results in a range of 168 to 210 months imprisonment and a fine range of $20,000 to $200,000, pursuant to Section 5E1.2(c)(3).  In addition, neither the defendant nor the Government will seek a departure from the indicated Guideline imprisonment range.  Although the defendant may attempt to qualify for relief under 18 U.S.C. §§ 3553(f), 5C1.2 and 2D1.1(b)(6), Safety Valve, the defendant expressly acknowledges that he will not appeal nor collaterally attack any sentence that does not exceed 210 months.

2

## The Offense Conduct

5.    The following information is based on material received through interviews and material provided by the assistant United States attorney assigned to this case. In addition, the special agent for the Drug Enforcement Administration assigned to this matter was interviewed, as well as the defendant, who was interviewed in the presence of defense counsel on November 1, 2002, at the Wyatt Detention Facility in Central Falls, Rhode Island. On January 7, 2003, the defendant's case manager was contacted in an effort to schedule a second interview with the defendant. Any additional information obtained from an interview with the defendant will be submitted in an addendum.

6.    This case originated from the information of a confidential source who advised the New Haven Task Force that a large amount of crack and powder cocaine from New York was to be delivered by Miguel Machuca on June 28, 2000. The delivery was to be made to a customer at the Citgo gas station in New Haven, Connecticut. From 9:30 p.m. to 2:46 a.m., task force members observed Mr. Machuca coming to and from his apartment by his motor vehicle to the Citgo gas station. He made several trips back and forth between his home and the gas station. At 2:00 a.m., Mr. Machuca was stopped in his vehicle and task force members and a canine unit searched him and the vehicle. Within the vehicle, task force members found 319.3 gross grams, (136.1 pure net grams) of cocaine base, 319 gross grams, (104.81 pure net grams) of powder cocaine and 37.8 gross grams, (.73 pure net grams) of heroin. Some of the narcotics were hidden under the center console. On that same date, the defendant's apartment was also searched and 7,025.10 gross grams, (4,484.0 pure net grams) of powder cocaine was found there. On his person, $1,230 was found.

7.    On December 10, 2002 and January 6, 2003, the Drug Enforcement Administration clarified that Mr. Machuca was the partner of another Dominican Republican national, Jose Cosme. The defendant and Mr. Cosme managed the New Haven, Connecticut drug trafficking organization. The organization also had operations in New York and Massachusetts. Mr. Machuca's alias, "Maestro," means leader in the context of the drug operation. Mr. Machuca distributed crack and cocaine from New York City to New Haven to Massachusetts. He transported drugs and drug proceeds back to New York. It is believed that the defendant was responsible for four to five kilograms of crack cocaine per week.

8.    The following are the co-conspirators that were involved in the offense conduct while the defendant was involved in the offense conduct: Co-leader, Jose Cosme, assistants to the leaders, Sotero Rivera, Juan Candelario, Lorenzo Rivera, mid-level participant,

3

Blanca Candelario, and lower level participants, Serapio Rivera and Juan Nunez Berroa.

9.      When the defendant was arrested, his former partner filled his position with another family member. Nevertheless, the New Haven drug trafficking organization lost its significance after Mr. Machuca's arrest. The defendant was responsible for storing 7,025.10 gross grams, (4,484.0 pure net grams) of powder cocaine in his apartment to the extent that narcotics were hidden in his walls. Much of what appeared to be cocaine base was boric acid and a form of salt. He was also trusted to deliver large quantities of narcotics. The DEA also believe that by giving a false name and place of origin, Mr. Machuca obstructed justice and he made false statements to law enforcement and the Court, pursuant to § 3C1.1(A).

10.     Due to ongoing arrests of members of the operation, the operation has ceased to exist as of October 2002. The defendant's former partner, Jose Cosme, is presently a fugitive.

Victim Impact

11.     The Victim and Witness Protection Act is applicable, however, there are no identifiable victims; 18 U.S.C. § 3663.

Adjustment for Obstruction of Justice

12.     The Probation Officer has information to suggest that the defendant impeded or obstructed justice. However, it does not appear to raise to the level to add the enhancement, pursuant to § 3C1.1.

Adjustment for Acceptance of Responsibility

13.     On November 1, 2002, during the presentence interview, the defendant fully accepted responsibility for his participation in the drug trafficking. He acknowledged that he sold drugs as a result of his inability to speak English and to obtain employment. He regrets his involvement in the offense conduct and his desire is to return to the Dominican Republic and be with his family. A three level reduction under § 3E1.1(b)(1) for acceptance of responsibility is recommended.

4

Offense Level Computation

14.   The November 1, 2001, Guidelines Manual has been used to calculate the defendant's sentencing guidelines.

15.   Base Offense Level:  The guideline for a 21 U.S.C. § 846 offense is found in § 2D1.1 of the Guidelines.  Pursuant to 2D1.1(c)(1), 1.5 kilograms or more of cocaine base results in a base offense level of 38.                                                          38

16.   Adjustment for Role in the Offense:  None.                                    0

17.   Victim Related Adjustment:  None.                                             0

18.   Adjustment for Obstruction of Justice:  The probation officer has no information to indicate that the defendant either impeded or obstructed justice.                  0

19.   Adjusted Offense Level (Subtotal):                                            38

20.   Adjustment for Acceptance of Responsibility:  The defendant has admitted his involvement in the offense.  Under § 3E1.1(a), a two level reduction is recommended.  Because of the timely provision of full information about the offense/timely notification of a plea change to the Government, an additional one level reduction is recommended under § 3E1.1(b)(1).  A total reduction of three levels is recommended.
                                                                                   -3

21.   Total Offense Level:                                                         35

Impact of the Plea Agreement

22.   The Government and the defendant stipulated that the defendant's base offense level, pursuant to § 2D1.1(c)(1), is 38.  The parties calculated that the defendant possessed 1.5 kilograms of cocaine base.  However, the lab report does not confirm the stipulated amount of cocaine base or an equivalent amount for a combination of narcotics.  The lab report indicated that the equivalent amount of cocaine and cocaine base, when converted to marijuana, is at least 3,000 kilograms but less than 10,000 kilograms of marijuana (3,641 kilograms).  Pursuant to § 2D1.1(c)(3), the offense level is 32.  In order for an offense level to be the stipulated 38, the defendant would need to have possessed 30,000 kilograms or more of the equivalency of marijuana.

5

23.  In addition, according to the investigation by case agents of the Drug Enforcement
     Administration (DEA), the defendant was a co-leader with Jose Cosme and five
     others in the New Haven, Connecticut group of the drug trafficking operation
     involving New York, Connecticut and Massachusetts. Pursuant to § 3B1.1(a), Mr.
     Machuca was a leader of a criminal activity that involved five or more participants of
     an extensive operation: Co-leader, Jose Cosme, assistants to the leaders, Sotero
     Rivera, Juan Candelario, Lorenzo Rivera, mid-level participant, Blanca Candelario,
     and lower level participants, Serapio Rivera and Juan Nunez Berroa..

24.  Consequently, with a base offense of 34 and a role adjustment of four levels, the
     adjusted offense level is 38.  Three levels are subtracted for acceptance of
     responsibility which results in a total offense of 35. A total offense level of 35 with
     a criminal history of category I, results in the same  guideline range that was
     stipulated, 168 to 210 months.

## PART B.  THE DEFENDANT'S CRIMINAL HISTORY

### Criminal Convictions

25.  None.

### Criminal History Computation

26.  The defendant has no prior criminal record. According to the Sentencing Guidelines
     Table (Chapter Five, Part A), zero to one criminal history point establishes a criminal
     history category of I.

## PART C.  OFFENDER CHARACTERISTICS

### Personal and Family Data

27.  Following a significant period following the defendant's arrest, it was determined that
     the defendant had assumed the name, Miguel Machuca, a person from Puerto Rico.
     However, his true name is Miguel Guerrero Cendeño.  He was born in Juie,
     Dominican Republic on November 13, 1961 to Sucundio Guerrero, age 60 and Felipe
     Cendeño, age 56. The defendant explained that his parents married many years after
     his birth, however, they have maintained a relationship for 42 years.  His father
     maintains a farm of livestock, primarily bulls.  The defendant's mother is a

6

homemaker. They are life-long residents of the Dominican Republic and presently reside in Juie, Dominican Republic.

28.    The defendant's Immigration and Naturalization records indicated that Miguel Guerrero Cedeño came to the United States at an unknown date. He illegally left the United States in 1988. He re-entered the United States without inspection in September 1990. He was granted voluntary deportation and he complied and left the United States later in 1990. No other records are available.

29.    Miquel Guerrero Cedeño is the oldest of six children born to his parents. All of the defendant's siblings reside in the Dominican Republic. A brother, Francisco Guerrero Cedeño, age 39, is in a common law marriage, and they have children. He works as a home builder. Manuel Guerrero Cedeño, age 36, is in a common law marriage, and they have children. He is an engineer who oversees the building of homes. Mirabel Guerrero Cedeño, age 34, is licensed in tourism and prepares others to work in tourism. She is in a common-law relationship and they have children. Manio Guerrero Cedeño, age 32, works with his brothers who are in the house building business. He is in a common-law marriage and they have children. Manisol Guerrero Cedeño, age 30, is a computer operator. He has children, but is not in a committed relationship. Alexis Guerrero Cedeño, age 20, lives with his parents and works on the farm. He is in a common law marriage and they have children.

30.    The defendant said that he grew up in a loving and caring home based on close family relationships. The home was financially and emotionally stable, as well as a trouble free family. He said that his mother is suffering as a result of his current legal situation. He described his mother as a devoted Catholic. The defendant said although he was raised in the Catholic faith, while he has been detained he has been participating in Protestant Bible study.

31.    On January 2, 2003, the defendant's mother was interviewed by telephone at her home in the Dominican Republic. Felipe Cedeño said that her son is a good person and that his family loves him very much and they want him home as soon as possible. She confirmed that the family works on a farm, raising livestock and that the defendant's family lives in the Dominican Republic. She also said that the defendant's daughter lives with her and that she is doing well.

Marital

32.    The defendant is presently single and has never married. However, he had a significant relationship with Klarissa De Los Santos, age 32. He stated that he met

7

her in the city where he lived in the Dominican Republic. **The defendant advised that
he knew her since he was one year old.** She left Connecticut in 2001 after the
defendant was in prison for a year. According to the defendant, **Ms. De Los Santo has
gone on with her life and is dating others.** He said that since his incarceration he
received a letter from her but he did not write her back.

33.    Three children were born as a result of the long term relationship with **Ms. De Los
Santos.** Rosa Guerrero, age 17, lives with her mother in the **Dominican Republic and
attends high school.** Solongie Guerrero, age 15, lives with **the defendant's mother in
the Dominican Republic and attends middle school.** As a result, the defendant related
that he has established his most significant relationship with Solongie Guerrero. Cuika
Guerrero, age 12, also lives with her mother in the Dominican Republic and she
attends grade school.

34.    As the result of brief relationship with a woman named **Ramona, age 30, the
defendant has a son, Miguel, age 13.** The defendant could not recall Ramona's or his
son's last name. The defendant advised that his son knows that he is his father,
however, he has the least amount of contact with him.

35.    The defendant said that he has maintained contact with all of his children and during
his detention, the defendant's father is supporting them financially. The defendant
said that prior to being detained, he provided financially and emotionally for his
children.

36.    The defendant said that he does not know the whereabout of any collateral contacts.

Physical Condition

37.    **The defendant is a white Hispanic male who stands five feet, nine inches tall and
weighs 170 pounds.** He has dark brown hair and green eyes. Under his left eye, there
are scars that he sustained during a childhood fall.

38.    He reported that he has diabetes. Mr. Guerrero Cedeño explained that symptoms of
his conditions contribute to his having a temper. His diet is restricted and he has to
limit his sugar intake. The defendant stated that he also has high blood pressure and
cholesterol. He said that he manages his medical conditions with diet, exercise and
medication. Mr. Guerrero Cedeño related that his paternal aunts were seriously
affected by diabetes, and many of their limbs were amputated. Medical records from
Wyatt Detention Facility have been requested. Any medical information will be
provided to the Court in the form of an addendum.

8

## Substance Abuse

39.    The defendant said that he drinks alcohol socially.  Mr. Guerrero Cedeño reported that he has no history of drug use.

## Mental and Emotional Health

40.    The defendant reported that he has no history of mental or emotional problems, and no history of treatment for such problems.  Mr. Guerrero Cedeño explained that he attributes his positive attitude to his faith in God.

41.    The defendant described himself as someone who is not intelligent or funny.  He said that he is not violent and he would not hurt anyone.  Mr. Guerrero Cedeño sees himself as a quiet, reserved, shy person.  He believes that his parents would describe him as a good person and son.  He feels that his brother would also describe him in a positive manner.

42.    Mr. Guerrero Cedeño requests that the Court give him an opportunity to be a father to his children and to help his parents.

## Education and Vocational Skills

43.    The defendant reported that he completed the fifth grade in the Dominican Republic.  He reportedly dropped out of school during the sixth grade.  He advised that he has trouble reading and writing Spanish, but can not read or write English.  Mr. Guerrero Cedeño explained that he could not focus in school because he was more interested in participating in organized rooster fights.  During his period of incarceration, the defendant plans to study English and computer science.  Mr. Guerrero Cedeño's goal is to gain a better education so he will be more marketable when he returns to the Dominican Republic.  Consequently, he hopes to be able to help his family in the Dominican Republic.

## Employment Record

44.    From 1993 to 2000, while living in New Haven, Connecticut, Mr. Guerrero Cedeño reportedly earned money by purchasing used cars and then fixing them and reselling them at a profit (unable to verify). His business ended as a result of his being arrested for the instant offense.

9

45. From 1988 to 1993, the defendant reported that he worked as a construction worker in Puerto Rico. He noted that he was paid under the table (unable to verify).

Financial Condition: Ability to Pay

46. The defendant failed to submit a financial statement. On January 2, 2003, defense counsel said that the defendant does not have any assets or liabilities. Based on his apparent financial situation, it appears that he is not able to pay a fine within the Sentencing Guideline range.

## PART D. SENTENCING OPTIONS

Custody

47. Statutory Provisions: The maximum term of imprisonment is life and a mandatory minimum of 10 years; 21 U.S.C.§ 841(a)(1).

48. Guideline Provisions: Based on a total offense level of 35 and a criminal history category of I, the guideline imprisonment range is 168 - 210 months.

Supervised Release

49. Statutory Provisions: If a term of imprisonment is imposed, a term of supervised release is 5 years to life must also be imposed; 21 U.S.C. § 841(b)(iii).

50. Guideline Provisions: If a term of imprisonment is imposed, the guideline range for a term of supervised release is 5 years under 21 U.S.C. § 841(b)(iii).

Probation

51. Statutory Provisions: Because the instant offense is a Class A felony, the defendant is not eligible for probation 18 U.S.C. § 3561(a)(1).

52. Guideline Provisions: Because the minimum of the guideline range exceeds 8 months, probation is not authorized. § 5B1.1, Application Note #2.

Fines

53. Statutory Provisions: The maximum statutory fine is $4 million; 18 U.S.C. § 3571.

10

54. Guideline Provisions: The fine range for the instant offense is from $20,000 to $4 million; § 5E1.2(c)(3). The defendant is to pay the mandatory special assessment fee of $100; 18 U.S.C. § 3013.

55. The Court may consider the cost to the Government of any imprisonment, probation or supervised release; Guideline § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts, received on June 3, 2002, suggests a monthly cost of $1,848.02 for imprisonment, $1,383.50 for community confinement and $270.59 for supervision. The Court may consider the defendant's present and future ability to pay when considering imposition of the fine. The total punitive fine may not exceed the maximum of the applicable guideline fine range.

56. The Victim and Witness Protection Act is applicable, however, there are no identifiable victims; 18 U.S.C. § 3663.

Denial of Federal Benefits

57. The Court, pursuant to 21 U.S.C. § 862 and Guideline § 5F1.6, may deny eligibility for certain federal benefits to the defendant for up to five years after conviction for distribution or possession of a controlled substance. Such benefits include any grant, contract, loan, professional or commercial license provided by an agency of the United States or by appropriated funds of the United States. This prohibition does not include any retirement, welfare, Social Security, health, disability, veterans benefits, public housing or other similar benefits, or any other benefit for which payments or services are required for eligibility.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

58. This section serves as a forum for possible departures and should not be construed as a recommendation by the U.S. Probation Office.

59. Defense counsel suggested that the Court consider the defendant's two years of pretrial detention at Wyatt Detention Facility as a significant hardship and is a mitigating factor and sentence the defendant to the low end of the Sentencing Guideline range, pursuant to § 5K2.0.

## PART F. PROBATION OFFICER'S EVALUATION

60. The defendants, Miguel Guerrero Cedeño, age 42, is a first time offender. He comes for sentencing for Possession With Intent to Distribute 50 Grams or More of Cocaine

11

Base, in violation of 21 U.S.C. § 841. The defendant had a significant role in a drug trafficking operation. When he was arrested, he possessed a significant amount of narcotics in his car and in his apartment. Mr. Guerrero Cedeño reported that he did not use drugs.

61.    Mr. Guerrero Cedeño presents as a humble victim who turned to drug trafficking as a result of limited education and the inability to speak the English language. However, it is more likely that he has embraced a degenerate lifestyle since he dropped out of grade school to participate in gambling related to organized rooster fights.

62.    The defendant is from a close knit, hard working farming family. Mr. Guerrero Cedeño could have worked with his brothers who build homes or he could have worked on the family farm with his father. It seemed that the defendant chose to leave a secure, productive environment for thrill seeking. As a result of poor judgment, Mr. Guerrero Cedeño appears to be more comfortable living on the fringe of society. The defendant's behavior is an indication of greed and a disregard for law.

63.    The defendant's offense behavior not only adversely affected him but, also, the multitude of persons he sold drugs to, their significant others and society. Due to the defendant's ability to mislead people, his true character is not clear. He presented himself during the interview as sincere and personable. Intervention may help the defendant to change his careless and destructive patterns. Nevertheless, prior to being deported, the defendant plans to take advantage of educational opportunities so that he can be in a position to become gainfully employed. If he has realized that criminal involvement is not profitable and embraces preparation for and implementation of a productive life, he may find his way out of corruption.

Respectfully submitted,

MARIA RODRIGUES McBRIDE
CHIEF U.S. PROBATION OFFICER

By _Bunita B. Keyes_
   Bunita B. Keyes
   United States Probation Officer

12

Reviewed and Approved:

*Michael E. Sheehan*

**Michael E. Sheehan**
**Supervising United States Probation Officer**

**BBK/sbt**
**January 8, 2003**
**Hartford, CT**