C030503b.txt


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :  No. 3:00CR158(AWT)
                                :
          vs.                   :
                                :
MIGUEL GUERRERA-CEDANO          :
A/K/A MIGUEL MACHUCA            :
                                :  HARTFORD, CONNECTICUT
                   Defendant    :  MARCH 5, 2003
                                :
- - - - - - - - - - - - - - - - x
```

SENTENCING


BEFORE:

        HON. ALVIN W. THOMPSON, U.S.D.J.



APPEARANCES:


        FOR THE GOVERNMENT:

            U.S. ATTORNEY'S OFFICE
            157 Church Street
            P.O. Box 1824; 23rd Floor
            New Haven, Connecticut 06510.
            BY:  H. GORDON HALL, AUSA


        FOR THE DEFENDANT:

            JACOBS, GRUDBERG, BELT & DOW
            350 Orange Street
            P.O. Box 606
            New Haven, Connecticut 06511
            BY:  WILLIAM M. BLOSS, ESQ.

                        Corinna F. Thompson, RPR
                        Official Court Reporter


                                            2

1                          3:22 p.m.

                    Page 1


GOVERNMENT
EXHIBIT
3

```
                          C030503b.txt
2                THE COURT:  Good afternoon.  Please be
3      seated.
4                      We are here in case number 3:00CR158.
5                      Could I ask counsel to state their
6      appearances for the record and identify anyone else
7      seated at counsel table with you.
8                MR. HALL:  For the government, Your
9      Honor, Gordon Hall.
10               MR. BLOSS:  William Bloss for the
11     defendant, Your Honor, who is present, and also the
12     court interpreter, Mariluz Angeles, is present.
13               THE COURT:  Thank you.  And I note that
14     Ms. Keyes from the Probation Office is with us.  She's
15     seated in the jury box.
16                     And it is my understanding that the
17     defendant needs the services of an interpreter so I'll
18     ask our interpreter to stand and identify herself for
19     the record.
20               THE INTERPRETER:  Good afternoon, Your
21     Honor.  Mariluz Angeles from Multilingual Translation.
22               THE COURT:  Could you briefly state your
23     qualifications for acting as an interpreter for the
24     Spanish language.
25               THE INTERPRETER:  Sure, Your Honor.  I
```

                                                           3

```
1      have been accredited and I have worked with Your Honor
2      on several occasions and I personally have talked to
3      this particular defendant a couple of times with the
4      defense and also with Attorney Gordon Hall, who can
5      definitely say I've been admitted in many cases in the
```
                          Page 2

```
                              C030503b.txt
 6    federal court as well as in state court.
 7                 THE COURT:  And you mentioned you have
 8    spoken with this defendant in the past?
 9                 THE INTERPRETER:  Yes, Your Honor, I
10    have.
11                 THE COURT:  And do you understand him?
12                 THE INTERPRETER:  Yes, Your Honor.
13                 THE COURT:  And to the best of your
14    knowledge, does he understand you?
15                 THE INTERPRETER:  Yes.
16                 THE COURT:  And are you willing to
17    simultaneously translate from English into Spanish
18    today everything that happens in the courtroom?
19                 THE INTERPRETER:  Yes, I am, Your Honor.
20                 THE COURT:  Let me ask:  Are we going to
21    amend the indictment, or do something about making it
22    reflect the defendant's accurate name?  That's why I
23    haven't called him anything other than "the defendant"
24    so far.
25                 MR. HALL:  I think, Your Honor, the
```

                                                                4

```
 1    defendant has indicated that his true name is Miguel
 2    Guerrera-Cedano and I can't verify that, but I don't
 3    have any reason to doubt it either.
 4                 I would just move that the indictment be
 5    amended to reflect that name as a name he's known as.
 6                 THE COURT:  Mr. Bloss?
 7                 MR. BLOSS:  I have no objection to that.
 8    I did provide the government with copies of
 9    Mr. Guerrera's passport, Dominican passport.  I have
```

                              Page 3

C030503b.txt

10    the original still, I believe, and it's my

11    understanding from the Presentence Report that

12    Probation has determined that the INS has records

13    relating to this man in the name of Guerrera.  So I

14    think that makes sense to amend the indictment.

15             THE COURT:  Motion is granted.

16             MR. HALL:  Thank you, Your Honor.

17             THE COURT:  In that case, Ms. Angeles, do

18    you understand -- I want to put some questions to

19    Mr. Guerrera at this time then.

20             THE INTERPRETER:  Sure.

21             THE COURT:  Mr. Guerrera, do you

22    understand Ms. Angeles?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  And are you satisfied to have

25    her serve as your interpreter today?

5

1             THE DEFENDANT:  Yes.

2             THE COURT:  And have you communicated

3    with your attorney using the services of this

4    interpreter?

5             THE DEFENDANT:  Yes.

6             THE COURT:  And have you had any problems

7    communicating using the services of this interpreter?

8             THE DEFENDANT:  No.

9             THE COURT:  And Mr. Bloss, have you had

10    any problems using the services of this interpreter?

11             MR. BLOSS:  No, Your Honor.

12             THE COURT:  Thank you.  In that case I'll

13    ask Ms. Angeles to raise her hand and be sworn in as

Page 4

```
                              C030503b.txt
14    the interpreter.
15                    (Interpreter sworn in.)
16                    THE INTERPRETER:  Yes, I do.
17                    THE COURT:  Please be seated.
18                    THE INTERPRETER:  Thank you, Your Honor.
19                    THE COURT:  On October 15, 2002, the
20    defendant, Mr. Guerrera, entered a plea of guilty to
21    Count 1 of an indictment which charges the defendant
22    with possession with intent to distribute 50 grams or
23    more of cocaine base, which was crack cocaine, in
24    violation of Section 841 of Title 21 of the United
25    States Code.
```

```
1                     The Court accepted the plea of guilty and
2     thereupon entered a finding of guilty.
3                     A Presentence Report was prepared for the
4     Court by the United States Probation Office and I have
5     reviewed that report and the three addenda to that
6     report with its author, Ms. Keyes.
7                     Mr. Bloss, have you had an opportunity to
8     review the Presentence Report as amended?
9                     MR. BLOSS:  Yes, I have, Your Honor.
10                    THE COURT:  Has your client read it or
11    has it been summarized by you?
12                    MR. BLOSS:  It has been read to him by
13    Ms. Angeles.
14                    THE COURT:  In its entirety?
15                    MR. BLOSS:  Yes.
16                    THE COURT:  Very good.
17                    Does the defendant have any criticisms of
```

C030503b.txt

18    or objections to the report as amended other than with

19    respect to paragraphs 22, 23 and 24 which deal with

20    the drug quantity and role in the offense?

21              MR. BLOSS:  No, Your Honor.

22              THE COURT:  They actually aren't the only

23    places dealt with.  It deals with the impact of the

24    plea agreement.

25              MR. BLOSS:  Correct, Your Honor.


7


1              THE COURT:  Thank you.

2              Mr. Hall, have you had an opportunity to

3    review the Presentence Report as amended?

4              MR. HALL:  I have, Your Honor.

5              THE COURT:  Does the government have any

6    objections to the report other than with respect to

7    paragraphs 22, 23, and 24?

8              MR. HALL:  No, Your Honor.

9              THE COURT:  Thank you.

10              I have discussed this point with the

11    Probation Office and I conclude that the appropriate

12    drug quantity is as set forth in the plea agreement

13    and that there should be no adjustment for role in the

14    offense.

15              This does not change the calculations

16    under the Guidelines at all.

17              With these modifications and there being

18    no objections to the other factual statements

19    contained in the Presentence Report as amended, the

20    Court adopts those statements as its findings of fact.

21              I direct the court reporter to make a

Page 6

C030503b.txt
22      written record of these findings as to the Presentence

23      Report.  I also direct the Clerk and the Probation

24      Office to append a copy of this written record to any

25      copy of the Presentence Report that is hereafter made

8

1       available to the United States Bureau of Prisons.

2                   The defendant in this case, Mr. Guerrera,

3       faces a maximum possible sentence of life in prison.

4       He faces a supervised release term of as much as a

5       life term.  And if he violates any condition of

6       supervised release, the Court then could sentence him

7       to additional time in prison of as much as three

8       years.

9                   Under Section 3571 of Title 18 United

10      States Code, the defendant may be fined as much as

11      $4 million, and under Section 3013, I must impose a

12      mandatory special assessment of $100.

13                  MR. HALL:  Your Honor, please?

14                  THE COURT:  Yes.

15                  MR. HALL:  I think that the Court could

16      sentence the defendant to a term, additional term of

17      up to five years imprisonment if he violates

18      supervised release.  The plea agreement may have

19      recited it incorrectly.

20                  THE COURT:  Did I take it from the --

21                  MR. HALL:  That's my fault.  The Court

22      has the authority to impose a sentence of up to five

23      years for the violation of supervised release.

24                  THE COURT:  With that amendment, is the

25      Court's statement of the maximum sentence in this case

Page 7

C030503b.txt

⧠

9

 1    accurate?
 2                MR. HALL:  Yes.
 3                THE COURT:  Mr. Bloss, is that your
 4    understanding as well?
 5                MR. BLOSS:  It's also my understanding,
 6    yes, sir.
 7                THE COURT:  Thank you.
 8                The Sentencing Guidelines suggest the
 9    following sentence in this case:  The total offense
10    level is 35.  The Criminal History Category is I.  The
11    Guidelines suggest a term of imprisonment in the range
12    of 168 months to 210 months, five years of supervised
13    release, a fine in the range of $20,000 to $4 million
14    and a $100 mandatory special assessment.
15                Ms. Keyes, is the Court's statement of
16    the Sentencing Guidelines provisions in this case
17    accurate?
18                MS. KEYES:  Yes, Your Honor.
19                THE COURT:  Thank you.
20                Before we proceed further, Mr. Bloss, I
21    would like to give you an opportunity to make any
22    statements that you wish to make on the defendant's
23    behalf.  And Mr. Guerrera, if you would like to say
24    anything, I would certainly like to hear it as well.
25                MR. BLOSS:  Thank you, Your Honor, yes.

⧠

10

 1                Your Honor, I just want to touch on a
 2    couple of brief issues that are addressed in the
                        Page 8

C030503b.txt

    3    Presentence Report before I get to the heart of my
    4    remarks.
    5            The Presentence Report speaks about the
    6    possibility of our seeking a departure under the
    7    safety valve provisions.  The issue of the safety
    8    valve departure was a matter of significant discussion
    9    between the parties, as was every other issue,
   10    frankly, relating to this case regarding quantity,
   11    regarding role, regarding right of Mr. Guerrera to
   12    file an appeal from the suppression motion.  And the
   13    parties, the government and the defense, I think
   14    resolved all of those issues in an honest way and in a
   15    way that is the best that could be done under the
   16    circumstances under the applicable Guidelines.
   17            The government, I think -- just for the
   18    benefit of the defendant, the government was not
   19    inclined to permit an appeal from the suppression
   20    ruling initially but as part of a bargaining process,
   21    the government did agree eventually to allow that.
   22    The safety valve provision, though, as Your Honor is
   23    aware -- and I did tell Mr. Guerrera that I hoped that
   24    we might be able to try to take advantage of that to
   25    seek a lower sentence -- the problem, of course, as

                                                11

    1    the Court knows, with the safety valve provision is
    2    that anything told to the government during the
    3    debriefing sessions can be counted as relevant conduct
    4    toward the Guideline sentence.  So where he could wind
    5    up benefitting by getting a two level lower sentence,
    6    it could cost him multiple levels going up.
                        Page 9

C030503b.txt

7          So while I think Mr. Guerrera was

8    disappointed that we could not do that, I've explained

9    that the risks -- my assessment is that the risks are

10   simply too significant and too unknown to try.

11         So with that, Your Honor, I recognize

12   that the Court cannot do better than 14 years under

13   the applicable Sentencing Guideline range.  And it is

14   very difficult for me to stand here and urge you to

15   sentence somebody to 14 years in a drug case involving

16   no violence, no weapons, no minors, a first offender,

17   but that's what I'm going to do and I'm going to

18   suggest, Your Honor, that you should give him the

19   minimum under the applicable Guidelines range.

20         There were some things you do know about

21   him.  He is going to address the Court, but you know

22   he's a first offender.  You know that he's 42 years

23   old.  So that under any set of circumstances, when he

24   gets out he is going to be over 50, well over 50, and

25   I think that there is some rational reason to believe

                                                        12

1    that somebody at that age who will be barred from ever

2    coming to the United States again is not a very

3    serious risk of recidivism here in the United States,

4    certainly.

5          Second thing you know about him is that

6    he is going to be deported.  That is a mandatory

7    circumstance of his conviction.

8          It is likely, Your Honor, that -- based

9    on my experience, it is likely that he will be held by

10   whatever the Immigration and Naturalization Service is

                        Page 10

c030503b.txt

11      now, in Louisiana following the service of this

12      sentence for some period of time before he is actually

13      deported, although obviously there is no defense to

14      deportation.  So he is actually going to be in custody

15      for a little longer than Your Honor's sentence,

16      regardless, and he's going to be in custody a little

17      longer because he's not going to get credit for his

18      federal sentence for the time he was in state custody

19      on these exact same charges from June 26th of 2000 to

20      November 17th of 2000.

21                      THE COURT:  I must confess, I didn't

22      understand that point.

23                      MR. BLOSS:  Here's why.  He was not

24      originally arrested on federal charges.  He was

25      arrested on state narcotics conspiracy charges.  There

13

1       were no federal charges pending for a substantial

2       period of time.  He was held on bond on the state

3       charges.

4                      So eventually, I think probably in

5       October or September, the government indicted him

6       federally.  Maybe I have the date wrong, but it

7       doesn't matter for the purposes of this illustration,

8       and the federal government put a detainer on his state

9       file so that if the state charge was dismissed or

10      resolved one way or another, then he would be turned

11      over to federal custody.

12                      Up until the time that the state charge

13      was dismissed and he was taken into federal custody,

14      he was in state custody and the Bureau of Prisons will

C030503b.txt

15      not credit him for a day of that; even if you order
16      it, they won't.  I have been through this on another
17      case.  The best that can be done in a similar
18      circumstance, a judge departed down to reflect credit
19      for that period of time, but --
20              THE COURT:  I thought from things I had
21      been told in another case that if the state charges
22      were dismissed; in other words, he didn't serve time
23      on a separate charge, that he would get credit -- it's
24      not -- the BOP would give him credit.  But I'll
25      investigate that further.  It's not a huge point.

14

1               MR. BLOSS:  But here it's not the longest
2       period of time.  My understanding from other cases is
3       that he does not get credit because he's not in
4       federal custody, and I think there is a statute
5       specifically that says that, but Mr. Hall is looking
6       quizzical here.
7               MR. HALL:  Only because I'm looking at
8       the indictment and it was returned in July of 2000.
9               MR. BLOSS:  That's fine.  The indictment
10      was a detainer on his state file.  The state's charges
11      were not -- he was at Walker, the Walker state prison
12      through November 17th of 2000.
13              THE COURT:  So he was in state custody up
14      until -- and the Presentence Report reflects that --
15      he was in state custody until November 17th of 2000.
16      So my understanding is he doesn't get credit for that.
17      Okay?
18              MR. BLOSS:  I think, Your Honor, the -- I
                        Page 12

C030503b.txt

19      don't know how else to say this other than to just say
20      it directly; and that is that under any set of
21      circumstances, 14 years is a long time.  It's a long
22      time for somebody who this is his first trip through
23      here.
24                   As I mentioned before, there's not any
25      evidence of violence or gun use or anything like that.

15

1       Is it a good thing to sell drugs?  No, of course not.
2       I'm not going to suggest that it is.  But 14 years, I
3       think, gets -- furthers all the interests that Your
4       Honor has to take into account under the applicable
5       sentencing rules.
6                    The fact that Mr. Guerrera has been
7       detained for between two and a half to three years I
8       think is a factor that Your Honor can take into
9       account.  He has been at Wyatt for a little over two
10      years.  During that time period, because of the fact
11      that he's a pretrial detainee, he does not get
12      educational programs, he does not get vocational
13      training.  Essentially he's just passing time waiting
14      for the case to be resolved.  And that is a factor
15      that at least Judge Dorsey took into account in
16      departing from that applicable sentencing range, which
17      is not what I'm asking, but I am asking that at least
18      the Court take that into account in sentencing
19      Mr. Guerrera to a sentence at the bottom of the range.
20                   THE COURT:  Does he get good time credit?
21                   MR. BLOSS:  He will get good time credit,
22      yes, the 16 percent good time credit.  That much I'm
                              Page 13

C030503b.txt

23     sure of.

24              If you sentenced him to 14 years, he's

25     going to do another -- assuming he doesn't get credit

16

1     for the state case -- he's going to do another 11

2     years, or about 10, about 10.  So he'll be 52 when he

3     gets out and back to the Dominican Republic.

4              He would also -- because he's not a U.S.

5     citizen, the time he will do is in a medium facility,

6     at least since he would have an INS detainer on him.

7     So that the time he does will be relatively hard

8     compared to somebody in a similar position who is a

9     U.S. citizen.

10              I think, Your Honor, I think the -- I say

11    this a lot and I don't know whether I'm right or

12    wrong, but when you look at it, you can sentence him

13    to 14 years or 15 years or 16 years or 17 years or

14    anything in between.  It's hard for me to really say

15    that there is a material difference between a 14-year

16    sentence and a 15-year sentence or a 16-year sentence.

17              For us -- let's take -- Your Honor has to

18    take into account issues of deterrence, of course.

19    For you to say that well, I think a 15-year sentence

20    is enough but 14 is not enough, you've got to say, I

21    think that something is going to happen to

22    Mr. Guerrera in years 10 to 11 that wouldn't have

23    happened in years 1 through 10 that's going to teach

24    him a lesson.  I think that's very hard, where in the

25    kind of range we are talking where, where the numbers

c030503b.txt

1    are so high.  If the numbers were a year or two years,

2    that's maybe a different calculation.  But where the

3    numbers are so significant that I think that it's very

4    hard to articulate a difference, or very hard to be

5    convinced that there is a difference between a 14-year

6    sentence and some other sentence within the Guidelines

7    range.

8              There is no -- one of the factors that

9    Your Honor has to take into account is protection, and

10   there's no evidence or claim even that Mr. Guerrera

11   has been any risk of violence.  In fact, during the

12   three years he's been in detention, he's had no

13   disciplinary contacts with the authority at all.

14             Your Honor has to take into account the

15   seriousness of the crime, and I do not minimize the

16   seriousness of this by any means, but I think that

17   most people say that a 14-year sentence with

18   16 percent good time for a nonviolent, first time drug

19   offender, notwithstanding the quantity we're talking

20   about, is a serious sentence reflective of the serious

21   conduct.

22             In the old days, Your Honor, before the

23   Sentencing Guidelines and even in the early days of

24   the Sentencing Guidelines, the Court would have been

25   within its power to reduce Mr. Guerrera's sentence by

18

1    some period of time reflecting that he is going to be

2    deported, the theory being that he's not -- you have

Page 15

C030503b.txt

3    less to be concerned about for issues of recidivism

4    and issues of protection and so forth because he's not

5    going to be here, he's going to be back in the

6    Dominican Republic.  And absent the commission of a

7    new felony, he cannot ever come back to the United

8    States.

9            Now Your Honor can't do that anymore

10   under the Sentencing Guidelines, but I think that does

11   mitigate in favor for a sentence at the bottom of the

12   applicable Guidelines range.

13           I talk, Your Honor, about some systemic

14   issues, some issues that really don't relate to

15   Mr. Guerrera individually, and he is going -- I think

16   he is going to address Your Honor briefly regarding

17   his view of what he did.  But there are a couple of

18   other matters relating directly to him that I want to

19   mention.

20           One, Your Honor, is that Mr. Guerrera has

21   practically no education.  He is illiterate in English

22   and in Spanish.  He has very limited job skills.  And

23   I think -- I'm hopeful, Your Honor, that he learns

24   some English while he is the custody of the Bureau of

25   Prisons so that he is going to be more marketable when

19

1    he gets out and goes back to the Dominican Republic.

2    Right now Mr. Guerrera has very minimal skills and

3    training to help him live on outside.

4            Second, Your Honor, Mr. Guerrera, as the

5    probation officer went through the steps of contacting

6    Mr. Guerrera's mother in the Dominican Republic, which

Page 16

C030503b.txt

```
 7    I think is to be commended.  Most people don't do
 8    that.  He obviously has a very supportive family and
 9    family that wants him back and says they will take
10    care of him while he is getting back on his feet in
11    the Dominican Republic after he is released.
12                   And I mentioned, Your Honor,
13    Mr. Guerrera's age, his lack of record and I think all
14    of these things that I've mentioned mitigate in favor
15    of a sentence at the very bottom of the Guidelines
16    range, taking all of these circumstances into account.
17                   And now I know Mr. Guerrera does want to
18    address the Court.
19                   THE COURT:  Thank you.
20                   THE DEFENDANT:  Your Honor, I ask you to
21    please forgive me for everything that I've done wrong.
22    I repeatedly ask once and once again, I want to go
23    back with my family as soon as I can possibly do so,
24    and to be in your hands.
25                   Thank you.
```

                                                          20

```
 1                   THE COURT:  Thank you, sir.
 2                   Mr. Hall, does the government have
 3    anything to add?
 4                   MR. HALL:  Not much, Your Honor.  I
 5    hadn't intended to say much of anything.
 6                   I think I do need to respond to a couple
 7    of things that Mr. Bloss said.  I'm not even sure if
 8    it was the substance or the enthusiasm with which he
 9    delivered his remarks.
10                   I think he started out by saying that
```

C030503b.txt

11    there was no violence connected with the offense

12    conduct and there were no minors. Well, there is no

13    evidence that either were present in the offense

14    conduct. On the other hand, I think it would be

15    unrealistic and unreasonable to close one's eyes to

16    the effects on the community of what the defendant was

17    doing. And there is a strong probability that in some

18    way, shape or form, whether it be drug use by a minor

19    or drug use by the parents of a minor with all the

20    ramifications either one can have, it's reasonable to

21    assume that minors were involved, or at least it's not

22    reasonable to assume that they were not.

23              With respect to a couple of the

24    mitigating -- or factors that Mr. Bloss urges upon the

25    Court which he feels should mitigate the sentence

□

21

1     imposed, the defendant will spend time in INS

2     detention after is he released from the sentence that

3     the Court imposes for good reason. He came here

4     illegally to sell crack. He did that. We didn't do

5     that to him and the Court is not doing that to him.

6     The fact that that will have consequences for him it

7     seems to me should be expected.

8              Similarly, he will be in a higher

9     security level facility because he has an INS

10    detainer. Again, he put himself into that position.

11    Nobody invited him here to this country or authorized

12    him to come to this country to sell crack.

13              The fact that he was detained for a long

14    time at wyatt pretrial or pre-plea, not all his fault.

C030503b.txt

15    However, during most of that period of time he had

16    pending and was actively litigating a motion to

17    suppress in this Court.  He could have pled a lot

18    earlier or he could have gone to trial.  I'm not

19    saying that that election should not be his to make

20    freely, but I point out that he had a role in that.

21             Mr. Bloss pointed out that in his

22    judgment anyway it is unlikely that any deterrent

23    effect would flow from an increased sentence imposed

24    by the Court partly because of the defendant's age and

25    life circumstances.  That may be, but I think it's

                                                          22

1     important to keep in mind that deterrence is not the

2     only function served by the imposition of a sentence

3     and the statute recognizes this.  The primary function

4     is punishment and along with punishment the

5     recognition by the community that conduct which its

6     representatives have seen fit to criminalize in a very

7     serious way will be uniformly rewarded with

8     appropriate strictures.  And I think that looking at

9     the imposition of the sentence from that perspective,

10    it is important for the Court to impose what it feels

11    is an appropriate sentence irrespective of the fact

12    that -- not irrespective of the fact, but placing in

13    proper context the fact that the defendant may pose

14    less of a risk or be perceived to pose less of a risk

15    of recidivism after his release.  What he did was

16    terrible and that's the main reason he is here and the

17    main reason he is sentenced as he will be.

18             Along the same lines, the Guidelines, the

C030503b.txt

19    change that Mr. Bloss referred to in the authority of
20    the Court to recognize that an individual will face
21    deportation following service of sentence, the courts
22    no longer are authorized to do that.  We're no longer
23    authorized to recommend it or permit it, to the extent
24    that we could, in part I think because of the
25    recognition on the part of the entire government that

☐

23

1    the -- a primary purpose of a sentence is, as I said,
2    punishment and the fact that somebody is having a
3    consequence visited upon them, such as deportation for
4    being here illegally, shouldn't put them in a position
5    that is more favorable than the position of an
6    American citizen would be having committed the same
7    offense.
8                  So those are just some thoughts that I
9    had that flowed from Mr. Bloss's remarks.
10                  I don't have any sentencing
11    recommendation for the Court.  The government is
12    satisfied that the Court will do the right thing.
13                  THE COURT:  Thank you.
14                  MR. BLOSS:  Your Honor, can I say two
15    sentences?
16                  THE COURT:  Certainly.
17                  MR. BLOSS:  My comments on the effect on
18    the community and violence was only directed at the
19    point that, as Your Honor is aware, there are some
20    groups and some people who engage in extraordinarily
21    violent conduct in this particular business.  There is
22    just not any evidence of that here.  There were no

Page 20

C030503b.txt
23     guns seized from either the apartment or car.   There
24     were no scanners and et cetera, et cetera.
25                  My second point, Your Honor, on all the

24

1      factors I talked about I'm including under the plea
2      agreement from seeking a departure and I'm not doing
3      that.   My only point on the factors that Court has to
4      take into account, deterrence and punishment, I don't
5      think there is a sentence within the Guideline range,
6      including 14 years, that does not adequately follow
7      those factors.   That's the only point I want to make
8      on that.
9                  MR. HALL:   May I have one point; just
10     that if there had been evidence of minors in the
11     offense or violence on the part of the defendant, he
12     would be in a different sentencing range.
13                  THE COURT:   Understood.
14                  I think most of the arguments you made
15     are already ones I thought about so I've processed
16     things in my own mind and I've made a couple of
17     refinements as you've been talking.
18                  Before imposing sentence, I do want to
19     state for the record the factors that a district court
20     must take into consideration in determining a
21     particular sentence to be imposed under Title 18
22     United States Code Section 3553.   And I note that
23     because the range under the Guidelines exceeds 24
24     months, I am required to state in open court my
25     reasons for imposing a sentence at a particular point

Page 21

C030503b.txt
25

1    in the range.
2             Under Section 3553, the factors
3    applicable in this case that are to be considered by a
4    court in sentencing are as follows:
5             One, the nature and circumstances of the
6    offense and the history and characteristics of the
7    defendant;
8             Two, the need for the sentence that is
9    imposed to serve the various purposes of a criminal
10   sentence, which I'm going to elaborate on in a moment.
11            Three, the kinds of sentences available;
12            Four, the kinds of sentence and
13   sentencing range established for your category of
14   offense, Mr. Guerrera, committed by your category of
15   defendant under the Sentencing Guidelines;
16            And five, the need to avoid unwarranted
17   sentence disparities among defendants with similar
18   records who have been found guilty of similar conduct.
19            As you might be able to tell, I have to
20   balance these factors and I'm going to try to explain
21   to you how I've balanced them to reach a decision as
22   to what I believe is the appropriate sentence in your
23   case.
24            I have reviewed the Presentence Report
25   which was prepared by the Probation Office.  That's

26

1    the document, long document that was read to you.  I
2    have considered your counsel's remarks and I've
3    considered your remarks.  I've also considered the
                    Page 22

c030503b.txt

4      remarks of counsel for the government.  And as you may
5      know, I did get a sentencing memorandum from your
6      attorney and I've read that and considered those
7      arguments as well.  And I've also thought about the
8      various purposes of a criminal sentence and how the
9      sentence in your case can match up with those
10     purposes.
11             First and foremost among the purposes of
12     a criminal sentence is to provide just punishment, and
13     part of the meaning of a just punishment is that it
14     not be unduly different from sentences received by
15     defendants with similar records who have been
16     convicted of similar conduct.
17             A criminal sentence can also protect the
18     public by immobilizing an offender and isolating him
19     or her from society, thereby absolutely protecting
20     society from the offender during the period of
21     incarceration.  I don't feel that is a purpose that
22     particularly needs to be served in your case.
23             Another function of a sentence is
24     something we refer to as specific deterrence, namely,
25     to make sure that you will not again commit a crime

27

1      after your release from prison, and I haven't
2      concluded that that's a purpose that I need to be
3      particularly concerned about in your case either.
4              Another purpose we refer to as general
5      deterrence, that is, to promote respect for the law
6      and to warn others who might be tempted to act as you
7      acted that the community, represented by the law

C030503b.txt

8      enforcement authorities and by the courts, treats
9      these offenses seriously and will punish others who
10     behave as you have behaved.
11              And finally, I've also thought about the
12     goal of rehabilitation.
13              In your case I'm particularly aware of
14     the need to provide just punishment and the need for
15     general deterrence.
16              As I mentioned, because the range in this
17     case exceeds 24 months, I must articulate my reasons
18     for choosing a sentence at a particular point in the
19     range.  In your case I have concluded that a sentence
20     at the bottom of the range is appropriate for two
21     reasons:
22              One, I think it is a substantial sentence
23     for a first offense;
24              And two, I believe it will adequately
25     serve the purposes of just punishment and general

28

1      deterrence.
2              Would you please stand, sir.
3              Mr. Guerrera, I hereby sentence you to
4      the custody of the United States Bureau of Prisons for
5      a period of 168 months with credit for time served.
6              After imprisonment you shall be placed on
7      supervised release for a period of five years.  A
8      condition of your supervised release will be that you
9      not commit another federal, state or local crime
10     during the term of supervision.
11              As a further condition of your supervised
                        Page 24

C030503b.txt

12        release, you shall not possess a controlled substance.

13        In addition, you shall refrain from any unlawful use

14        of a controlled substance and submit to a drug test

15        within 15 days of your release and at least two

16        periodic drug tests thereafter for use of a controlled

17        substance.

18                A special condition of your supervised

19        release will be that if you are deported, you shall

20        not reenter the United States without the prior

21        written approval of the Attorney General and prior

22        written notification to the United States Attorney's

23        Office and the United States Probation Office for the

24        district of Connecticut.

25                Of course, all of the standard conditions

29

1         of supervised release in this district shall also

2         apply in your case.  Those conditions will be set

3         forth in the judgment in this case.

4                 If you violate any of these conditions

5         during your period of supervised release, the Court

6         will be free to sentence you to additional time in

7         prison of up to three years.

8                 Do you understand that, sir?

9                 I'm sorry.  The Court is free to sentence

10        you to additional time in prison of up to five years.

11                Do you understand that, sir?

12                THE DEFENDANT:  Yes.

13                THE COURT:  So in effect you do have a

14        sentence of five years hanging over your head during

15        the period of time that you're on supervised release,

Page 25

C030503b.txt

16    and I want to make sure you understand that the Court
17    would not hesitate to sentence you to additional time
18    in prison if you violated the terms of your supervised
19    release.
20                Do you understand that, sir?
21                THE DEFENDANT:  Yes.
22                THE COURT:  The Court hereby directs that
23    the Probation Office provide the defendant with a
24    written statement that sets forth all of the
25    conditions of the defendant's supervised release.  The

                                                        30

1     statement shall be sufficiently clear and specific so
2     that it may serve as a guide for the defendant's
3     conduct.
4                 Mr. Guerrera, I am not ordering you to
5     pay a fine because you do not have the ability to pay
6     one.  However, you shall pay a mandatory special
7     assess of $100 which is due and payable immediately.
8                 You may be seated, sir.
9                 MR. BLOSS:  May I have one moment?
10                (Pause)
11                MR. BLOSS:  Thank you, Your Honor.
12                THE COURT:  The judgment of the Court
13    will be prepared for my signature by the Clerk's
14    Office in consultation with the United States
15    Probation Office.
16                Mr. Guerrera, under some circumstances a
17    defendant or the government may have the right to
18    appeal within 10 days any sentence that the Court
19    imposes.  However, you agreed in your plea agreement
                            Page 26

C030503b.txt

20    to not appeal or collaterally attack in any
21    proceeding, including in a habeas petition, your
22    sentence if the sentence of imprisonment did not
23    exceed 210 months.  Your sentence does not exceed 210
24    months, therefore you have waived your right to appeal
25    or collaterally attack your sentence.

                                                              31

1              I thought, however, that in your plea
2     agreement you reserved the right to appeal the Court's
3     ruling denying your motion to suppress evidence.  You
4     have 10 days from the entry of judgment in this case
5     in which to file a notice of appeal.  If you do not
6     file a notice of appeal within 10 days of the entry of
7     judgment, then you may lose your right to appeal.
8              Do you understand that, sir?
9              THE DEFENDANT:  Yes.
10             THE COURT:  If you cannot afford to pay
11    for the cost of an appeal, you have the right to apply
12    for leave to appeal in forma pauperis, that is, the
13    Court will allow you to appeal and to use the services
14    of an attorney at no cost to you if you cannot afford
15    to pay yourself.
16             Do you understand that, sir?
17             THE DEFENDANT:  Yes.
18             THE COURT:  Mr. Bloss, I assume that you
19    will take care of any appeal, filing any notice of
20    appeal?
21             MR. BLOSS:  I will, Your Honor.  I will,
22    just for the record, file a CJA Form 23 financial
23    affidavit here today because I will file a motion for
                          Page 27

C030503b.txt

24    leave to proceed without paying the filing fee.

25                    THE COURT:  Certainly.

                                                              32

1                    And are there any other matters that need

2    to be addressed?

3                    MR. HALL:  I don't believe so, Your

4    Honor.

5                    MR. BLOSS:  Not that I know of, Your

6    Honor.

7                    THE COURT:  Well, thank you very much.

8    We'll recess.

9                    (Whereupon, a recess followed)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              33

C030503b.txt

```
1
2
3                    C E R T I F I C A T E
4
5
6
7              I, Corinna F. Thompson, RPR, Official
8    Court Reporter for the United States District Court
9    for the District of Connecticut, do hereby certify
10   that the foregoing pages are a true and accurate
11   transcription of my shorthand notes taken in the
12   aforementioned matter to the best of my skill and
13   ability.
14
15
16
17                    _____
18
19                    CORINNA F. THOMPSON, RPR
                       Official Court Reporter
20                     450 Main Street, Room #225
                       Hartford, Connecticut 06103
21                          (860) 547-0580
22
23
24
25
```

Page 29